In re PORTLAND ELECTRIC POWER CO.

No. B–23986.

No. 956.

United States District Court
D. Oregon.
Sept. 6, 1944.

See also D.C., 97 F.Supp. 857.

890

Clarence D. Phillips, Portland, Or., for debtor.

Ralph H. King, Portland, Or., for independent trustees of debtor.

Frederick M. DeNeffe, Paul E. Kern, Portland, Or., for Bondholders Committee.

W. Stevens Tucker, San Francisco, Cal., for Securities & Exchange Commission.

Charles A. Hart, Portland, Or., Edgar G. Crossman and Davis, Polk, Wardwell, Sunderland & Kiendl, New York City, for Guaranty Trust Co.

Justin N. Reinhardt, Portland, Or., for First Preferred Stockholders.

MacCormac Snow, Harry Beckett, Robert T. Mautz and V. Lyle McCroskey, Portland, Or., for Prior Preference Stockholders.

JAMES ALGER FEE, Chief Judge.

This is a proceeding for a reorganization of the debtor, which was a registered public utility holding corporation, under the provisions of the Public Utility Holding Act of 1935, 15 U.S.C.A. § 79 et seq. The independent trustees appointed by this Court have filed a proposed plan of reorganization which was submitted to the Securities and Exchange Commission, which held hearings and recently failed to approve this plan together with other plans submitted at the same time. The independent trustees have now filed a petition that the Court, upon proper notice to all parties interested, fix a date for hearing to determine the value of the debtor's properties.

■ A public utility holding corporation is a corporation which is entitled to be reorganized under Chapter X of the Bankruptcy Act as amended.[1] Under this legislation, the Court in which a reorganization proceeding is filed has exclusive jurisdiction over the debtor and its property.[2] The Court here has already entered a preliminary order in which it has found that the petition filed herein was in good faith and that the circumstances indicated the feasibility of reorganization.[3]

■ It is objected, apparently that the language of Title 15, U.S.C.A. § 79k(f):

1. Title 11 U.S.C.A. §§ 1, 22, 506; Finletter, The Law of Bankruptcy Reorganization (1939) 111 et seq.

2. Title 11 U.S.C.A. § 511.

3. Title 11 U.S.C.A. § 546.

891

"In any such proceeding a reorganization plan for a registered holding company * * * shall not become effective unless such plan shall have been approved by the Commission after opportunity for hearing prior to its submission to the court", presents a bar to the consideration of the valuation of the property of the debtor in advance of the approval of a plan by the Commission. There is no foundation for such argument, and the present motion does not constitute an attack upon any power of the Commission under such a section. If that section be applicable at all to the proceeding here pending, which the Court does not now determine, complete jurisdiction is lodged in the Court to administer the affairs of a debtor in such a reorganization proceeding, and the Court, without question, may now proceed to fix the valuation of the property of the debtor. It will not, of course, affect the situation that the Commission may have, in consideration of some reorganization plan, fixed a different valuation, because, after all and with reference to the section above quoted, the bankruptcy act lodges jurisdiction in the Court to finally settle all matters with reference to the affairs of the debtor.

Although the Court thus resolves the question of jurisdiction in favor of its power to entertain this motion and proceed to set the valuation of the property, this determination does not require the granting of the motion at the present time. In the administration of this property, this Court has uniformly proceeded upon the theory that, irrespective of where the ultimate power lay, there should be no contention over jurisdiction with the state courts or with administrative boards, state [4] or federal.[5]

The Court has also, in the interests of smooth administration, permitted the Board

of Directors of the Portland General Electric Company, the operating subsidiary of the debtor, to be elected by the Guaranty Trust Company, which holds the stock owned by the debtor in pledge pursuant to arrangements made in a previous reorganization proceeding, and has held in abeyance efforts of the independent trustees of the debtor to operate this subsidary. In all this, the Court has adopted empiric tests of efficient operation and control in the public interest without attempting to determine intricate disputed questions.

The Court is of opinion that the technical training and broad administrative experience of the members of the Commission and its staff, give to any tribunal which is attempting to investigate the financial structure of, or to project plans for, the future of any public utility company, a firm foundation upon which to act. But "final determination rests, as in the past, in the courts." [6] The Commission has now submitted its report upon several of the plans which have heretofore been offered, in which report such plans are rejected.

The history of this proceeding so far is as follows:

On June 15, 1942, the independent trustees filed with this Court their report under Section 167 of the Bankruptcy Act, 11 U.S.C.A. § 567. This report contained the trustees' appraisal of the value of the assets of the estate, and invited creditors and stockholders to tender such suggestions as they might have for a plan of reorganization, as required by Section 167 sub. 6 of the Act.

On September 3, 1942, after the expiration of the period within which such suggestions were to be received, the trustees filed with the Commission an application for approval of a plan of reorganization dated as of June 15, 1942. This was done

4. The Court permitted the State Public Utility Commissioner to work out a suggested return of war time profits in connection with Portland General Electric Company, a subsidiary of the debtor, in order to prevent a conflict as to jurisdiction.

5. The Court invited the Securities and

Exchange Commission into this proceeding and has uniformly looked to the Commission for proper positions with reference to technical matters, representation, scales of fees and other like matters.

6. Debate upon Section 11(f), Congressional Record, June 7, 1935, page 885.

892

pursuant to the Court's order of June 28, 1942, which directed that the plan be submitted to the Commission for approval in accordance with Section 11(f) of the Public Utility Holding Company Act of 1935, Section 79k(f), Title 15, U.S.C.A. Extensive hearings were held before the Commission on the trustees' plan, together with other plans filed by other interested parties—in Philadelphia, Pennsylvania, in November, 1942, and in Portland, Oregon, in February, March and May, 1943. The record before the Commission was closed on May 28, 1943, with the consent of all parties. Thereafter, briefs were filed before the Commission, and the Commission heard oral argument on September 21, 1943, and took the matter under advisement.

On June 12, 1944, the trustees filed the petition now under consideration. On the same day, the Court entered an order setting said petition down for hearing on July 10, 1944, for the purpose of hearing and considering arguments as to whether a hearing to determine the value of debtor's properties should be held.

On June 20, 1944, the trustees filed a supplemental report, as of June 15, 1944. On July 1, 1944, the Commission issued its findings, opinion and order, pursuant to Section 11(f) of the Holding Company Act.

The Commission has given thorough consideration to the matter of valuation with reference to these plans and has suggested the outline of a plan which apparently the staff believes could be worked out. Time was extended for the filing of amended plans.

■ Under the circumstances, the Court is of opinion that hearings by the Court in the present stage of the matter would hinder and delay consummation rather than accelerate progress. It is, however, in the public interest that this matter be brought to a speedy conclusion. The independent trustees, acting under order of the Court, filed the report and the plan in the middle of 1942. The Commission took the plan under advisement in September, 1942, and has now, ten months later, filed a report rejecting all the plans. In view

of the fact that the Court is responsible for the speed of the proceedings and for the ultimate determination thereof, and in view of the fact that it is obvious that, whether the Commission approve a plan or themselves recommend a plan, a considerable time must be consumed in judicial consideration and determination of the manifold intricate issues herein involved, the Court directs that any party who may have an alternative plan to suggest place the same, forthwith, before the Commission. The Court will hold in abeyance the commencement of hearings upon valuation for a reasonable time in order to give the Commission an opportunity to approve plans so submitted or, in the alternative, to submit their own plan.

See also, D.C., 97 F.Supp. 857.